UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN COUNCIL OF LIFE INSURERS, et al., § § § § Plaintiffs, § § v. § § UNITED STATES DEPARTMENT OF § LABOR, et al., § § Defendants. § § | Civil Action No. 4:24-cv-00482-O |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' Motion for Preliminary Injunction and Stay of Effective Date (ECF No. 11), Brief in Support (ECF No. 12), and Appendix (ECF No. 13), filed on May 24, 2024; Defendants' Response (ECF No. 44) and Appendix (ECF No. 45), filed on June 28, 2024; and Plaintiffs' Reply (ECF No. 55), filed on July 12, 2024. Having reviewed the briefing and applicable law, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion.

I.   BACKGROUND

This is an action under the Administrative Procedures Act ("APA") seeking to vacate new rules promulgated by the United States Department of Labor (the "DOL"). Plaintiffs seek an order preliminarily enjoining and staying the effective date of the related regulations adopted by the DOL on April 25, 2024 (the "Rule"), which include: (1) Retirement Security Rule: Definition of an Investment Advice Fiduciary, 89 Fed. Reg. 32,122 (Apr. 25, 2024); (2) Amendment to Prohibited Transaction Exemption 2020-02, 89 Fed. Reg. 32,360 (Apr. 25, 2024); and (3) Amendment to Prohibited Transaction Exemption 84-24, 89 Fed. Reg. 32,302 (Apr. 25, 2024);

1

and (4) Amendment to Prohibited Transaction Exemptions 75-1, 77-4, 80-83, 83-1, and 86-128, 89 Fed. Reg. 32,346 (Apr. 25, 2024).

### A. Statutory Background

The Employee Retirement Income Security Act ("ERISA") is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). Title I of ERISA imposes strict duties of loyalty and prudence on "fiduciar[ies]" of 401(k)s and other employer-provided plans. 29 U.S.C. § 1104. The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence . . . that a prudent man . . . would use." *Id.* § 1104(a)(1)(B). The duty of loyalty is "'the highest known to the law.'" *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000). It requires fiduciaries to act "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). In addition, Title I subjects fiduciaries to "prohibited transactions" provisions, which bar them from "receiv[ing] any consideration" (such as a sales commission) "from any party dealing with such plan in connection with a transaction involving the assets of the plan." *Id.* § 1106(b)(3). Title I makes fiduciaries personally liable for any losses to the plan resulting from violations of the statutory requirements—including violations of the fiduciary duties and prohibited transaction provisions—and it provides both DOL and private parties a right of action to enforce fiduciaries' obligations. *Id.* §§ 1109, 1132. Violations of the prohibited transaction provisions are also subject to an excise tax penalty enforced by the IRS. 26 U.S.C. § 4975.

By contrast, Title II of ERISA applies to non-employer-sponsored, personal IRAs. Congress structured Title II such that IRA fiduciaries are not subject to the same duties of loyalty and prudence, or to any private right of action. 26 U.S.C. § 4975. However, Title II subjects IRA

fiduciaries to the same "prohibited transaction" provision as Title I, enforceable by the IRS through an excise tax penalty. *Id.* §§ 4975(a)–(b). Under both Title I and Title II, ERISA fiduciary status attaches to those who exercise certain types of authority or control over plans and IRAs, as well as to so-called "investment advice fiduciaries"—those who "render[] investment advice for a fee or other compensation . . . with respect to any moneys" of an IRA or employer-sponsored plan. 29 U.S.C. § 1002(21)(A).

### B. Regulatory Background

One year after Congress enacted ERISA, DOL promulgated a regulation establishing a five-part test (the "1975 Regulation") to determine when a person is an investment advice fiduciary. 40 Fed. Reg. 50,842 (Oct. 31, 1975) (codified at 29 C.F.R. part 2510.3-21). This is consistent with ERISA: "a person is a fiduciary with respect to a plan to the extent" that, as relevant, "he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan." 29 U.S.C. § 1002(21)(A)(ii).

Under the 1975 Regulation, fiduciary obligations arise when a person (1) renders advice as to the value of securities or other property or makes investment recommendations, (2) "on a regular basis to the plan," (3) "pursuant to a mutual agreement, arrangement or understanding" that (4) that the advice will serve as a "primary basis for investment decisions with respect to plan assets," and (5) the advice is "individualized" "based on the particular needs of the plan." 40 Fed. Reg. 50,842, 50,843 (Oct. 31, 1975) (codified at 29 C.F.R. § 2510.3-21(c)). Consistent with the common law's foundational requirement that fiduciary relationships involve special, intimate relations of trust and confidence, DOL's test—particularly its requirements that advice be provided on a regular basis and pursuant to mutual arrangement—generally did not reach one-time sales recommendations, such as a recommendation to purchase an annuity for inclusion in an IRA.

3

### C. The 2016 Rule

In 2016, DOL sought to abandon its long-established five-part test and impose fiduciary status whenever a person makes a "recommendation" to a retirement saver "as to the advisability of acquiring, holding, disposing of, or exchanging, securities or other investment property." 81 Fed. Reg. 20,946, 20,948 (Apr. 8, 2016) (the "2016 Rule"). DOL's principal legal defense was that ERISA's definition of fiduciary was not tied to the common law and permitted the agency to define fiduciary "more broadly" than the common law. *Id.* at 20,990.

The Fifth Circuit disagreed and vacated the 2016 Rule in its entirety. *Chamber of Commerce v. U.S. Dep't of Labor*, 885 F.3d 360 (5th Cir. 2018). As the Fifth Circuit noted, "[a]ll relevant sources indicate that Congress codified the touchstone of common law fiduciary status—the parties' underlying relationship of trust and confidence." *Id.* at 369. That common-law understanding was fortified by ERISA's use of the phrase "advice for a fee"; "the preposition 'for' . . . indicates that the purpose of the fee is not 'sales' but advice.'" *Id.* at 373. The 1975 five-part test "flowed directly from contemporary understanding of 'investment advice for a fee'" because it "contemplated an intimate relationship between adviser and client beyond ordinary buyer-seller interactions." *Id.* at 374. By contrast, the 2016 Rule unlawfully disregarded the "dichotomy between mere sales conduct, which does not usually create a fiduciary relationship . . . , and investment advice for a fee, which does." *Id.*

### D. The 2024 Rule

Eight years later, on April 25, 2024, the DOL promulgated a renewed version of its previous rulemaking. This new agency action established an amended test for a "fiduciary" to an ERISA plan. According to the Rule, a person qualifies as a fiduciary when they "render[] investment advice for a fee or other compensation, direct or indirect, with respect to any moneys

4

or other property of such plan." 29 U.S.C. § 1002(21)(A)(ii); 26 U.S.C. § 4975(e)(3). The Rule has an effective date of September 23, 2024.

Like the vacated 2016 rulemaking, the Rule expands ERISA fiduciary status to insurance agents and brokers (among others) serving retirement savers. In place of the five-part test, the Rule provides for fiduciary status to attach (in relevant part) whenever a person "either directly or indirectly . . . makes professional investment recommendations to investors on a regular basis as part of their business," and "the recommendation is made under circumstances that would indicate to a reasonable investor in like circumstances that the recommendation" (i) "is based on review of the retirement investor's particular needs or individual circumstances"; (ii) "reflects the application of professional or expert judgment to the retirement investor's particular needs"; and (iii) "may be relied upon by the retirement investor as intended to advance the retirement investor's best interest." 89 Fed. Reg. at 32,122.

The Rule pairs this broadened definition of fiduciary status with revised Prohibited Transaction Exemptions (PTE 84-24 and PTE 2020-02) that DOL claims will permit agents and brokers to receive sales commissions despite fiduciary status. But those PTEs impose costly obligations on insurance agents, brokers, distributors, and insurance companies, including a requirement that the newly deemed fiduciaries provide a "written acknowledgment" stating that they are "providing fiduciary investment advice and … are fiduciaries under Title I, [Title II], or both." 89 Fed. Reg. at 32,226. This "written acknowledgment" would have the obvious (and thus, presumably intended) effect of subjecting parties to state-law claims for breach of contract or fiduciary obligations. Those PTEs, moreover, subject covered entities to duties of loyalty and care that mirror the fiduciary standards Congress imposed on Title I, but not Title II, fiduciaries.

5

E. **Procedural Background**

On May 24, 2024, Plaintiffs filed this lawsuit challenging the Rule.[1] Shortly after initiating these proceedings, Plaintiffs moved for a preliminary injunction and stay of the Rule's effective date. To avoid irreparable injury, Plaintiffs requested relief by July 26, 2024.[2] Defendants opposed this relief. Before this Court issued a decision, Judge Jeremy Kernodle in the Eastern District of Texas stayed the effective date for two aspects of the rulemaking package at issue here: (1) the Retirement Security Rule: Definition of an Investment Advice Fiduciary, 89 Fed. Reg. 32,122 (Apr. 25, 2024) and (2) the Amendment to the Prohibited Transaction Exemption 84-24, 89 Fed. Reg. 32,302 (Apr. 25, 2024). *Federation of Ams. for Consumer Choices, et al. v. U.S. Dep't of Lab.* ("*FACC*"), No. 6:24-cv-00163-JDK, at *41–*42 (E.D. Tex. July 25, 2024). The Court agrees with and fully incorporates that analysis here. Because the parties in *FACC* only challenged half of the relief Plaintiffs seek in this case, two aspects of the Rule remain at issue here: Amendment to Prohibited Transaction Exemption 2020-02, 89 Fed. Reg. 32,260 (Apr. 25, 2024) and Amendment to Prohibited Transaction Exemptions 75-1, 77-4, 80-83, 83-1, and 86-128, 89 Fed. Reg. 32,346 (Apr. 25, 2024).[3]

II. **LEGAL STANDARD**

Under the APA, a "reviewing court" may "postpone the effective date of an agency action . . . to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. "Motions to stay agency action pursuant to [section 705] are reviewed under the same standards used to evaluate requests for interim injunctive relief." *Affinity Healthcare Servs. v. Sebelius*, 720 F. Supp. 2d 12, 15 n.4 (D.D.C. 2010); *see also Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016)

---

[1] Pls.' Compl., ECF No. 1.
[2] Pls.' Mot. 2, ECF No. 11.
[3] Pls.' Resp. to Notice of Stay of Effective Date 2, ECF No. 60.

(applying preliminary injunction factors). This requires the movant to show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that issuance of a preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. ANALYSIS

Applying the four factors here, the Court determines that each favors Plaintiffs. As a result, a stay of the Rule's effective date under 5 U.S.C. § 705 is warranted. This Court is not the first to determine that such relief is appropriate for this Rule. *See, e.g.*, *FACC*, No. 6:24-cv-00163-JDK, at *20–*21 (staying the effective date for two components of the Rule).

### A. Likelihood of Success on the Merits[4]

Plaintiffs are virtually certain to succeed on the merits. To show a substantial likelihood of success on the merits, Plaintiffs need not show they are entitled to summary judgment on their claim, but must instead present a prima facie case. *Daniels Health Servs.*, 710 F.3d at 582. The Administrative Procedure Act ("APA") instructs courts to "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). Judicial review of agency actions "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(B)–(C), are cumulative under the arbitrary and capriciousness standard, which "governs review of *all* proceedings that are subject to challenge under the APA." *Menkes v. DHS*, 637 F.3d 319, 330

---

[4] To be sure, Plaintiffs are also likely to succeed on other arguments, such as the Rule being found arbitrary and capricious. *FACC*, No. 6:24-cv-00163-JDK, at *33–*35. Similarly, the Rule likely implicates the major questions doctrine. *Id.* at 338. However, the Court need only find that one ground is substantially likely to succeed on the merits to justify preliminary relief—be it a stay or an injunction.

7

(D.C. Cir. 2011) (citing *Consumers Union of U.S., Inc. v. FTC*, 801 F.2d 417, 422 (D.C. Cir. 1986)). Thus, "[i]n *all* cases" of judicial review under Section 706, "agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, *or* constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–414 (1971) (citing 5 U.S.C. § 706(2)(A)–(D)) (emphases added).

As previously mentioned, the Court fully agrees with the analysis of the first factor in the *FACC* case and fully adopts that reasoning here. No. 6:24-cv-00163-JDK, at *22–*32 (E.D. Tex. July 25, 2024) (explaining how the Rule conflicts with both ERISA's statutory text as well as Fifth Circuit precedent). As *FACC* explained, Plaintiffs are likely to succeed on the merits of their claim because the Rule "conflicts with ERISA in several ways." *Id.* In doing so, the Rule exceeds the DOL's authority by departing from the common law. Just as the 2016 Rule conflicted with the statutory text when it attempted to broaden "fiduciary" just six years ago. *Chamber*, 885 F.3d at 360.

Construing ERISA's text, the Fifth Circuit previously determined that the statutory meaning of "fiduciary" codified the common law understanding as a "relationship of trust and confidence" between a fiduciary and her client. *Id.* at 369–70. Given this understanding, the Fifth Circuit recognized that ERISA embraced the industry distinction between investment advice and mere sales conduct. *Id.* at 372–76. Indeed, ERISA tied fiduciary status to "advice for a fee," revealing that Congress intended to capture circumstances in which the "purpose" of a paid fee is for "advice," not "sales." *Id.* at 373. The Fifth Circuit explained that this "statutory language" "preserves" the "important distinction" between insurance agents and brokers—who are

8

"compensated only for completed sales"—and investment advisers—who are "paid fees because they 'render advice.'" *Id.*

Like the 2016 Rule, the Rule overrides this "important distinction." *Id.* Under the Rule, the DOL expands ERISA's fiduciary standard in a way not limited to "those already recognized as fiduciary under the common law" and instead grants DOL discretion to recognize a fiduciary relationship where the common law would not.[5] At one point, the DOL even goes so far as to assert the common law is the "wrong reference point."[6] The Fifth Circuit already rejected those claims, and DOL's efforts to revisit them are devoid of merit. ERISA does not define fiduciary in functional terms. Instead, it restricts an investment-advice fiduciary to a common law understanding. DOL may not regulate beyond this common law standard. As the Fifth Circuit explained, there is no statutory basis for concluding that Congress intended to depart from the "well-settled meaning" of "fiduciary" under the common law. *Chamber*, 885 F.3d at 371.

As a whole, Defendants arguments are nothing more than an attempt to relitigate the *Chamber* decision. Because the Fifth Circuit's *Chamber* decision unambiguously forecloses all of Defendants' arguments, the Court need not repeat why those arguments fail here. Instead, such arguments are appropriately raised to the en banc Fifth Circuit or the Supreme Court—not in a district court bound by Fifth Circuit precedent. For the reasons, and those stated in *FACC*, the Court concludes that Plaintiffs have carried their burden at this stage to show a likelihood of success on the merits. Therefore, Plaintiffs have satisfied "arguably the most important" of the four factors. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005).

---

[5] Defs.' Opp. 13, ECF No. 44.
[6] *Id.* at 30.

9

### B. Substantial Threat of Irreparable Harm

Not only is the Rule likely unlawful, it also likely to cause irreparable harm to Plaintiffs. Irreparable harm "must be more than an unfounded fear on the part of the applicant." *Daniels Health Servs.*, 710 F.3d at 585 (cleaned up). It is "well-established" that a harm is considered "irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir.1984)). But if those costs cannot be recovered, the harm may still be irreparable. *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

Qualifying non-pecuniary injuries include "increased costs of compliance, necessary alterations in operation procedures, and immediate threats of costly and unlawful adjudication of liability." *Career Colls. & Schs. of Texas v. U.S. Dep't of Educ.*, 96 F.4th 220, 235 (5th Cir. 2024). An exception also exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989). Likewise, complying with invalid agency action "almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433. Such costs are nonrecoverable "because federal agencies generally enjoy sovereign immunity for any monetary damages." *Wages & White Lion Invs.*, 16 F.4th 1130, 1142 (5th Cir. 2021). And because the proper inquiry is "not so much" a question of "magnitude," but "irreparability," *Texas v. EPA*, 829 F.3d at 433, most types of non-de minimis compliance costs are sufficient, *Restaurant Law Ctr.*, 66 F.4th at 600. For harms that are non-pecuniary, the alleged irreparable injury must also be concrete—"speculative injury is not sufficient" and "there must be more than an unfounded fear on the part of the applicant." *Daniels Health Servs.*, 710 F.3d at 585 (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). So long as "'the threatened harm

is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction.'" *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

Without immediate relief, Plaintiffs will likely suffer concrete and irreparable injury. In fact, DOL does not even dispute that Plaintiffs have demonstrated irreparable injury.[7] Rightfully so. Plaintiffs' documentation of the compliance costs they will face are well beyond de minimis. During the first year alone, the Rule will cause more than half a billion dollars in compliance costs.[8] And another $2.5 billion in costs will occur over the next decade.[9] Even if the "DOL vastly understate[s] those costs,"[10] an estimate of this magnitude is already sufficient to establish irreparable injury. *See Restaurant Law Ctr.*, 66 F.4th at 598–600 (finding irreparable harm based on DOL's cost estimate of $177 million per year).

Declarations submitted in support of Plaintiffs confirm these costs. For instance, 87% of independent insurance agents estimate that the Rule will increase their staffing and operational costs.[11] Making matters worse, 93% of these agents anticipate rising professional liability insurance premiums.[12] Combined with low-account (low-commission) sales becoming more time-intensive and burdensome, agents no longer believe such sales to be economically viable and will result in lost profits.[13] Some agents even fear that they will be forced out of business,[14] to

---

[7] *See generally* Defs.' Opp., ECF No. 44.
[8] Pls. Mot. at 23.
[9] *Id.*
[10] *Id.*
[11] Pls.' App. 4, ECF No. 13 (Mayeux Decl. ¶ 8; App. 11 (Massey Decl. ¶ 10).
[12] *Id.* at 16 (Cadin Decl. ¶ 4); App. 12 (Massey Decl. ¶ 13).
[13] *Id.* at 11–12 (Massey Decl. ¶ 12); *id.* at 28 (Hudspeth Decl. ¶ 25).
[14] *Id.* at 28–29 (Hudspeth Decl. ¶ 27).

restructure their business,[15] or into retirement.[16] These harms "threaten[] the very existence of [these agents'] business[es]." *Texas v. EPA*, 829 F.3d at 434 & n.41.

Insurance carriers also face significant unrecoverable costs. Among other things, insurers will need to overhaul supervision systems to comply with PTE 84-24's requirement that insurers review every recommendation of one of their annuities made by an independent agent before an annuity is issued. 89 Fed. Reg. at 32,341. They will also need to develop new training programs, alter recordkeeping and disclosure practices, and upgrade technologies.[17] And even though these requirements are subject to a "one-year transition period," *id.* at 32,171, most agents report that their efforts will need to begin within the next 60 days (and possibly even immediately) to ensure that the systems are fully operational when the requirements take effect.[18] Those costs—averaging roughly $2.5 million per company—establish the need for preliminary relief and also show that the Department's cost estimate is substantially underinclusive.[19] For those entities required to pledge fiduciary status to comply with PTE 2020-02 or PTE 84-24, undoing fiduciary status when the Rule is vacated will also prove challenging.[20]

In sum, these costs easily satisfy the Fifth Circuit's "more than de minimis" standard. *Restaurant Law Ctr.*, 66 F.4th at 600. Therefore, the Court finds that Plaintiffs sufficiently demonstrate irreparable injury.

### C. Balance of Equities and the Public Interest

The final factors the Court must weigh are the balance of the equities and the public interest, which "merge" when the government is a party. *Nken*, 556 U.S. at 435. In this assessment,

---

[15] *Id.* at 36 (Pinckard Decl. ¶ 36); *id.* at 42 (Fisher Decl. ¶ 12).
[16] *Id.*
[17] Pls.' Mot. 24, ECF No. 11.
[18] Pls.' App. at 48, ECF No. 13 (Neely Decl. ¶ 11).
[19] *Id.* at 47–48 (Neely Decl. ¶10); *id.* at 51 (DiVencenzo Decl. ¶¶ 7–8).
[20] Pls.' Mot. 25, ECF No. 11

courts evaluate the "the competing claims of injury and . . . consider[s] the effect on each party of the granting or withholding of the requested relief," while simultaneously considering the public consequences of granting injunctive relief. *Winter*, 555 U.S. at 24 (internal citations omitted). A court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). At the same time, a court must weigh any purported injuries the enjoined party may experience against the strong likelihood that they will not succeed on the merits. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021) (explaining that "any injury to [the enjoined party] is outweighed by [a] strong likelihood of success on the merits" by the requesting party).

These factors likewise cut in Plaintiffs' favor. Generally, there is "no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (citing *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)). In this respect, the government-public-interest equities evaporate upon an adverse decision touching upon the merits. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 43–44 (D.D.C. 2013) (Jackson, J.) (expounding that public interest arguments are "derivative of . . . [the] merits arguments and depend in large part on the vitality of the latter"). This remains true "even in pursuit of desirable ends" that the Government may seek here. *Wages & White Lion Invs.*, 16 F.4th at 1143 (quoting *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2490 (2021)).

Plaintiffs' strong showing of a likelihood of success is dispositive of these factors because "'there is generally no public interest in the perpetuation of unlawful agency action.'" *Biden*, 55 F.4th at 1035. "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022). Additioanlly, there is a strong public interest in limiting

the substantial harm to consumers of the type that was inflicted by DOL's last failed attempt at fiduciary regulation, as studies show.[21] In fact, numerous studies document the Rule's significant harm to low- and middle-income consumers.[22]

The DOL does not sufficiently identify any countervailing hardship from a stay that would simply preserve the status quo. While DOL counters that a stay will interfere with its ability to "advise the public of [its] construction of the statutes and rules which it administers,"[23] this is insufficient to overcome the likely unlawfulness of that action. In the interim, consumers will remain protected by existing state and federal regulations, along with the 1975 Regulation. The six years from vacatur of the 2016 Rule to now do not demonstrate a newly pressing need for the Rule to take effect immediately. For these reasons, the Court holds that the balance of equities weighs in favor of Plaintiffs and that the public interest is not disserved by affording such relief.

## IV. REMEDY

Having determined that Plaintiffs carried their burden showing that a stay of the Rule's effective date under 5 U.S.C. § 705 is warranted in this situation, the Court must next decide how to award appropriate relief. The relief "should be crafted to provide 'complete relief to the plaintiffs.'" *Mock v. Garland*, F.4th 563, 587 (5th Cir. 2023) (quoting *Yamasaki*, 442 U.S. at 702). Plaintiffs request both a preliminary injunction and a stay of the Rule's effective date.[24] Although courts evaluate the same four factors for either remedy, a stay—which is a "temporary form of vacatur"—is a "less drastic remedy" than a preliminary injunction because "it only removes the source of the [agency]'s authority." *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 254 (5th Cir.

---

[21] Pls.' App. 56, ECF No. 13 (ACLI Comments 4); *id.* at 100–01 (NAIFA Comments 8-9); *id.* at 127–28 (IRI Comments 20-21); *id.* at 227–29 (Finseca Comments 2-4); *id.* at .251–55 (NAFA Comments 4-8).
[22] Pls.' Mot. 25, ECF No. 11; *see also* Br. of Amicus Curiae Hispanic Leadership Fund 11–15, ECF No. 38; Br. of Amicus Curiae Chamber of Commerce of the U.S. 16–21, ECF No. 31.
[23] Defs.' Opp. 34, ECF No. 44 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)).
[24] Pls.' Mot. 2, ECF No. 11.

2023) (quotation omitted), *rev'd on other grounds*, 602 U.S. 367 (2024). A stay "does not order the defendant to do anything." *Id.* Because complete relief is possible with the "less drastic remedy" of staying the Rule, the Court declines to enter a preliminary injunction at this time.

Section 705 of the APA permits the reviewing court to "issue all necessary and appropriate process to postpone the effective date of an agency action" that is pending review. 5 U.S.C. § 705. Preliminary relief under section 705 is typically "not party-restricted and allows a court to 'set aside' unlawful agency action." *Career Colls. & Schs. of Texas*, 98 F.4th at 255. Indeed, by "postpon[ing] the effective date of an agency action," a section 705 stay stops the portions of the rule which are deemed to be almost certainly unlawful. *Id.* (citing 5 U.S.C. § 705). Additionally, a section 705 stay does not need to be issued concurrently with agency action. *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 255–56 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 367 (2024) (expressing strong doubt that section 705 should be limited to "contemporaneous agency actions.").

Against this backdrop, a stay of the effective date makes sense. To begin, the Rule is almost certainly unlawful for a broad class of investment professionals in the industry—not just Plaintiffs. *Cf. Career Colls.*, 98 F.4th at 255 ("The almost certainly unlawful provisions of the Rule that CCST challenges apply to all Title IV participants and are thus almost certainly unlawful as to all Title IV participants."); *Ams. for Beneficiary Choice v. HHS*, 2024 WL 3297527, at *7 (N.D. Tex. July 3, 2024) ("Because [the Rule] [is] likely unlawful against the Plaintiffs, they are also almost certainly unlawful as to other industry actors."). That is because the Rule seeks to "establish a uniform definition for all persons giving investment advice to retirement advice to retirement investors under Title I and Title II of ERISA." 89 Fed. Reg. at 32,137.

Furthermore, complete relief necessitates consideration of the broader industry. Permitting

the Rule to take effect would cause non-parties to withdraw from the broader market altogether, just as they did following the 2016 Rule. *See Chamber*, 885 F.3d at 368 (noting that the 2016 Rule "spawned significant market consequences, including the withdrawal of several major companies" and other companies "limited the investment products that can be sold to retirement investors"). To cabin relief "to the parties," as Defendants urge,[25] would only "prove unwieldy" and "cause more confusion." *Feds for Med. Freedom*, 63 F.4th at 388. Not to mention that party-specific relief is not even contemplated by the APA. *Career Colls.*, 98 F.4th at 255 (recognizing that "the scope of preliminary relief . . . is not party-restricted." Indeed, "[n]othing in the text of Section 705, nor of Section 706, suggests that either preliminary or ultimate relief under the APA needs to be limited to an [associational plaintiff] or its members." *Id.*; *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2024 WL 3237691, at *15 (2024) (Kavanaugh, J., concurring) (explaining why government's "newly minted position" against universal vacatur is wrong). Therefore, the Court will not limit its relief to only the parties in this case.

  Finally, the Court recognizes that there may be times where remand to the promulgating agency can be an appropriate remedy when a rule is set aside as being arbitrary and capricious. *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021). But that is not the case here. The Court finds that Plaintiffs are virtually certain to succeed on their claims that the Rule exceeds DOL's statutory authority, making remand inefficient and a potential waste of judicial resources. All interested parties deserve prompt resolution.

---

[25] Defs.' Opp. 35, ECF No. 44.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Preliminary Injunction and Stay of Effective Date (ECF No. 11). Specifically, the Court **STAYS**, as of the date of this decision, the effective date of the Rule during the pendency of this suit and any appeal. However, the Court **DENIES** the request for a preliminary injunction at this time after determining that a stay of the effective date will provide Plaintiffs will complete relief.

**SO ORDERED** on this **26th day of July, 2024**.